UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN ROBINETT, et al., | CASE NO. C12-1755 MJP |
| Plaintiffs, | ORDER ON MOTIONS |
| v. | |
| OPUS BANK, et al., | |
| Defendants. | |

The Court, having received and reviewed:

1.  Defendants' Motion for Partial Summary Judgment (Dkt. No. 60), Plaintiffs'
    Response (Dkt. No. 72), Defendants' Reply (Dkt. No. 73), and Plaintiffs' Motion to
    Strike (Dkt. No. 75);

2.  Plaintiffs' Motion to Supplement Record/Delay Ruling (Dkt. No. 80), Defendants'
    Response (Dkt. No. 83), Plaintiffs' Reply (Dkt. No. 86), and Defendants' Surreply
    (Dkt. No. 89);

3.  Plaintiffs' Motion to Certify Local Law Question (Dkt. No. 79), Defendants'
    Response (Dkt. No. 84), and Plaintiffs' Reply (Dkt. No. 85)

1 | and all attached declarations and exhibits, makes the following rulings:

2 |      IT IS ORDERED that Defendants' Motion for Partial Summary Judgment is GRANTED

3 | IN PART and DENIED IN PART.

4 |      IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike is DENIED.

5 |      IT IS FURTHER ORDERED that Plaintiffs' Motion to Supplement the Record is

6 | GRANTED IN PART and DENIED IN PART.

7 |      IT IS FURTHER ORDERED that Plaintiffs' Motion to Certify Local Law Question is

8 | DENIED.

9 | **Background**

10 |      Plaintiffs are "longtime real estate developers in Snohomish County, Washington."  PSJ

11 | Response, p. 4.  Plaintiffs allege that Defendant Cascade Bank ("Cascade") had a practice of

12 | renewing their project loans as necessary ("hundreds" of renewals [Id. at p. 6] over the course of

13 | their relationship) and that these renewals were never signed by the bank itself.

14 |      Cascade was audited by the Federal Deposit Insurance Corporation ("FDIC") in 2009 and

15 | 2010, and as a result was required to reduce the long-term development loans and unsecured

16 | lines of credit in its portfolio.  At the request of Cascade, Plaintiffs voluntarily paid down their

17 | loans and lines of credit before they had matured, relying (they allege) on promises of long-term

18 | renewals of the loans on their current projects sufficient to permit completion of the projects.

19 | From 2009 through the merger with Defendant Opus Bank ("Opus") in 2011, Plaintiffs allege

20 | that Cascade continued to renew and extend Plaintiffs' loans and that at no time were Plaintiffs

21 | advised that this practice would not continue.

22 |      In July 2011, Opus and Cascade merged, a merger which Plaintiffs allege they approved

23 | based on representations by both banks that their lending relationship would continue; in fact,

24 |

1    Plaintiffs allege that Cascade's president told them that the only way to continue the lending

2    relationship was to approve the merger.  At around that time, the decision had been made within

3    Opus that it was getting out of the construction/real estate development loan business.  Despite

4    that decision, Plaintiffs were not informed of this "exit strategy" until January 2012.

5         Communications from Opus during that period (July 2011 – January 2012) requested

6    Plaintiffs to keep working with Opus, and that a solution would found regarding their loans.  Had

7    Plaintiffs known that their loans would not be extended, they allege that they could have

8    arranged alternative financing or pursued a workout plan through Chapter 13 bankruptcy.  Decl.

9    of J. Robinett at ¶ 16; Decl. of M. Robinett at ¶¶ 15-16; Decl. of Vail, Ex. P.

10        After requesting that Plaintiffs provide a proposal for a global solution regarding their

11   loans, Opus then required them to sign a "Pre-Negotiation Agreement."  The day after the Pre-

12   Negotiation Agreement was signed, Plaintiff Martin Robinett was sent a Notice of Default.  Opus

13   then downgraded Plaintiffs' Risk Rating, called the loans and commenced non-judicial

14   foreclosure proceedings against Plaintiffs' properties.

15        As a result of the default and foreclosures, Plaintiff John Robinett lost one of his

16   developments and another became "non-viable"; he was charged at least $100,000 in additional

17   refinance charges, default interest, late fees and attorneys fees and costs on his other

18   developments.  Decl. of J. Robinett at ¶ 21.  Plaintiff Martin Robinett suffered from a cross-

19   default on his rental loans, from which Opus collected a "windfall" of approximately $188,000.

20   Decl. of M. Robinett at ¶ 19; Decl. of Vail, Ex. W.

21        After Defendants' partial summary judgment motion had noted, Plaintiffs filed a "motion

22   to supplement the record," alleging that they had been provided new discovery and uncovered a

23   document ( a "Business Purpose Statement") executed by Cascade and signed by John Robinett

24

1  in 2000 which they contended supported their position that summary judgment was

2  inappropriate.  In their reply brief, they submitted further "new evidence" which Defendants then

3  moved to strike.

**Discussion**

4

5  Motion for Partial Summary Judgment

6        The partial summary judgment motion concerns two issues: the survival of Plaintiffs'

7  contract claims and the survival of their tort and equity claims.  The order will discuss each

8  separately.

9  *Contract claims*

10        Plaintiffs' contract causes of action – breach of contract and breach of the covenant of

11  good faith and fair dealing – will be dismissed.  The alleged oral agreements with Cascade and

12  Opus to extend the deadlines on their current loans or extend those loans run completely afoul of

13  the Credit Agreement Statute of Frauds ("CASF"):

14        A credit agreement is not enforceable against the creditor unless the agreement is in
         writing and signed by the creditor. The rights and obligations of the parties to a credit
15        agreement shall be determined solely from the written agreement, and any prior or
         contemporaneous oral agreements between the parties are superseded by, merged into,
16        and may not vary the credit agreement. Partial performance of a credit agreement does
         not remove the agreement from the operation of this section.

17
   RCW 19.36.110.
18
         There is a further prerequisite to enforcement of this Statute of Frauds provision:
19
         The creditor shall give notice to the other party on a separate document or incorporated
20        into one or more of the documents relating to a credit agreement. The notice shall be in
         type that is bold face, capitalized, underlined, or otherwise set out from surrounding
21        written materials so it is conspicuous. The notice shall state substantially the following:

22        ***Oral agreements or oral commitments to loan money, extend credit, or to forbear from
              enforcing repayment of a debt are not enforceable under Washington law.***

23
   RCW19.36.140 (emphasis supplied).  Defendants allege (and Plaintiffs do not contest) that every
24

1   written agreement concerning the loans at issue in this lawsuit contained the required statutory

2   language.

3          Washington courts have enforced this Statute of Frauds even in the face of oral

4   representations to the contrary upon which a party has relied.  In Cowlitz Bank v. Leonard (162

5   Wn.App. 250 (2011)), Defendant counterclaimed in a loan default case that bank representatives

6   had induced him to not change banks "by promising to continue to increase his loan amounts and

7   promising not to call his loan." Id. at 252.  His argument was unavailing in the face of the

8   CASF:

9          The representations that [Plaintiff] alleges [Defendant] made, even if proved, would
           constitute oral agreements to loan money, extend credit, of (sic) forbear from enforcing
10         repayment.   As such, under RCW 19.36.110, [Plaintiff] cannot enforce them.

11  Id. at 253-54.[1]

12         Plaintiffs' counterarguments are not persuasive.  They argue first that, because neither

13  Cascade nor Opus signed the credit agreements, they are not "parties" to the agreements and

14  cannot enforce them.  They cite no statutory or case authority for this position.  The statutory

15  excerpt they do cite ("…[a] credit agreement is not enforceable against the creditor unless the

16  agreement is in writing and signed by the creditor…") is inapplicable, since no one is seeking to

17  enforce the credit agreement "against the creditor."  Lastly, Plaintiffs are seeking to enforce oral

18  agreements, not written ones, so the issue of signatures is irrelevant.

19         They claim that, since Opus assumed "all liabilities" of Cascade in the merger, "whether

20  or not reflected or reserved against on balance sheets, books of account or records thereof," Opus

21  has waived any statutory defenses to claims based on oral representations by Cascade.  Again,

22  _____

23         [1] The Court is aware of the similarity between the facts in Cowlitz and the instant matter, yet still finds
       grounds to distinguish Cowlitz as far as Plaintiffs' tort and equity claims are concerned; see discussion of "Tort and
24     Equity Claims" infra.

they cite no supporting authority for this argument. If the oral agreements could not have been enforced against Cascade because of the CASF, they cannot be enforced against Opus. Because of RCW 19.36.110, whatever oral representations Cascade made created no contractual liability on their part, therefore there was no "liability" or "obligation" for Opus to assume.

Because the oral representations created no binding contract, neither bank incurred any obligation under the covenants of good faith and fair dealing based on those representations. "As a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms." Badgett v. Sec. State Bank, 116 Wn.2d 563, 570 (1991).

Based on the CASF, Opus is entitled to summary judgment of dismissal of all contractual causes of action (breach of contract, breach of covenant of good faith and fair dealing), and the Court will so order.

*Tort/equity claims*

Except for one paragraph discussing Plaintiffs' equity claims, Defendant's motion goes no further than the above arguments. Plaintiffs' response presents their counterarguments to Defendant's position regarding the CASF (discussed *supra*), then goes on to assert that Opus cannot use the CASF to avoid tort or equity liability (i.e., fraudulent/negligent misrepresentation, negligence, unjust enrichment).

In the briefing before the Court, the parties' arguments about the viability of the tort claims focus on a relatively recent development in Washington law called the independent duty doctrine. The doctrine replaces the former economic loss rule (which restricted Plaintiffs to their contractual remedies in a suit involving economic damage). The rule was articulated in a recent Washington appellate court decision:

1        Because the duty not to commit fraud is independent of the contract, the independent
         duty doctrine permits a party to pursue a fraud claim regardless of whether a contract
2        exists.

3    Key Development Investment, LLC v. Port of Tacoma, 173 Wn.App.1, 27 (2013)(*citing*

4    Jackowski v. Borchelt, 174 Wn.2d 720, 738 (2011) and Elcon Constr'n, Inc. v. Eastern

5    Washington Univ., 174 Wn.2d 157, 165-66 (2012)).  In a case where the Plaintiffs claimed that

6    they had forgone economic opportunities based on a letter of intent and oral representations by

7    Defendant, the Key Development court, employing the independent duty doctrine, found that

8    Plaintiffs had a right to pursue any tort claims (including fraud and negligent misrepresentation)

9    which had arisen independently of the parties' contract.  Id.

10        It is the finding of this Court that the facts of this case distinguish it from the line of cases

11   under which the independent duty doctrine has developed.  Plaintiffs' tort claims will survive,

12   but not on the basis upon which the parties have argued.  The Court finds that, because the CASF

13   operates to negate the creation of a contract between Plaintiffs and Defendants, the independent

14   duty doctrine is inapplicable.  A recent Washington Supreme Court case operates to illustrate the

15   defining principle here.  In Donatelli v. D.R. Strong Consulting Engineers, ___ Wn.2d ___, 312

16   P.3d 620 (2013), that Court said:

17            The analytical framework provided by the independent duty doctrine is only
             applicable when the terms of the contract are established by the record.  To
18           determine whether a duty arises *independently* of the contract, we must first know
             what duties have been assumed by the parties *within* the contract.
19
20   Id. at ¶ 15 (emphasis in original).

21        Based on this Court's finding that no contract exists between the parties to extend or

22   renew the loans for which the parties had previously contracted, there are no "terms of the

23   contract… established by the record" and thus no analysis is possible (or necessary) to determine

24   whether a duty arose independently of that contract.  There is only the question of whether

1  Plaintiffs have alleged sufficient facts to establish that they are entitled to take the question of

2  whether they were owed any duties in tort or equity by Defendants to a jury, and on that question

3  the Court finds in Plaintiffs' favor and denies summary judgment.

4      Plaintiffs have presented adequate evidence to support their allegations that, based on

5  statements by representatives of Cascade and Opus, they relied to their detriment on

6  representations that they needed to approve the merger to maintain their financial relationship

7  with their lenders and that Opus was committed to remaining in the real estate development loan

8  business. While this Court has previously ruled that Plaintiffs are not entitled to prosecute a

9  violation of the state Consumer Protection Act (Dkt. No. 76), they are entitled to take to the jury

10 the questions of whether Defendants' conduct constituted negligence, fraudulent

11 misrepresentation or unjust enrichment.

12     The Court is aware of, and unpersuaded by, Defendants' position that the CASF sweeps

13 aside all of Plaintiffs' causes of action. The CASF unquestionably applies to any contractual

14 claims that Plaintiffs have attempted to advance – no oral representation by Defendants can

15 operate to create a contract between these parties. That is not to say, however, that certain

16 actions (or inactions) of Defendants could not operate to violate another duty held between those

17 same parties.

18     The Court refers here to the allegations by Plaintiffs that they were (1) informed that the

19 lending relationship they enjoyed with Cascade would continue under Opus (in fact, that they

20 had to approve the merger with Opus to insure the relationship would continue) and (2) not

21 informed until many months after the fact that Opus had decided to discontinue any involvement

22 in the real estate development loan market. These representations (or failures to disclose)

23 implicate a duty which is not related to any alleged promises concerning the loans themselves

24

(which are of course governed by the CASF). The Plaintiffs have outlined the damages incurred by their reliance on these actions/inactions (including their failure to seek alternative financing or the protections of bankruptcy) and the Court finds that the duty to truthfully disclose whether or not Defendants intended to remain in the real estate development loan business is not eradicated by the fact that Plaintiffs were also improperly relying on oral representations that their credit agreements would be extended or renewed.

The Court is aware that the Washington Court of Appeals' ruling in Cowlitz Bank v. Leonard, 162 Wn.App. 250 (2011) involved claims somewhat similar to those of Plaintiffs. The defendant debtor in Cowlitz "alleged that Cowlitz Bank had fraudulently induced him into not changing banks by promising to continue to increase his loans amounts and promising not to call his loan." Id. at 252. The Washington appellate court found that

> [t]he representations that Leonard alleges Cowlitz Bank made, even if proved, would constitute oral agreements to loans money, extend credit, of (sic) forbear from enforcing repayment. As such, under RCW 19.36.110, Leonard cannot enforce them.

Id. at 253-54. But the alleged representations by Cascade that the lending relationship would continue under Opus, and Opus's alleged failure to reveal that the bank had no intention of remaining in the real estate development loan business, represent the potential breach of duty which is entirely different from an oral agreement to enter into a contract and, as such, does not invoke the operation of the CASF. These are not contractual promises (or "oral agreements to loans money, extend credit, [or] forbear from enforcing repayment'), but instead are representations (upon which Plaintiffs allegedly relied) that a business relationship will continue; the Court considers any further oral agreements about the nature of the financial arrangements between the parties which may have sprung out of that understanding to be a separate matter.

1    On that basis, <u>Cowlitz</u> is distinguished and Plaintiffs' claims in tort and equity will be

2  permitted to go forward.  This portion of Defendants' motion for partial summary judgment is

3  DENIED.

4  <u>Plaintiffs' Motion to Strike</u>

5    Plaintiffs move to strike Defendant's entire reply in support of their summary judgment

6  motion on the grounds that Defendant's request to dismiss Plaintiffs' claims in equity and tort

7  was not contained in its original motion.  In one sense, this is true – Defendants' original motion

8  moves for dismissal of "claims arising from alleged oral agreements to extend the terms of four

9  loans."  Motion, p. 1.  The briefing in the motion is confined to arguments concerning the

10  enforcement of CASF and does not specifically address the tort or equity causes of action

11  (although they do argue that Plaintiffs' equity claims are invalidated under <u>Greaves v. Med.</u>

12  <u>Imaging Sys., Inc.</u> (124 Wn.2d 389 (1994); PSJ Mtn, p. 8).

13    But Plaintiffs do raise the issue of their tort and equity claims in their response.  They

14  discuss the viability of those claims (even in the face of the CASF) and the Court finds that

15  Plaintiffs thereby opened the door to Defendant's reply briefing.  Once these issues were raised

16  in Plaintiffs' response, Defendants were completely within their rights to reply to Plaintiffs'

17  arguments concerning the tort and equity claims.

18    The motion to strike is DENIED in its entirety.

19  <u>Motion to Supplement the Record</u>

20    Plaintiffs seek to supplement their response to the summary judgment motion based on

21  evidence which they claim was not made available to them until after the deadline for their

22  responsive briefing had passed.  The first document at issue is called a "Business Purpose

23  Statement."  Mtn to Supplement, Vail Decl., Ex. B.  It was prepared by Cascade and signed by

24

John Robinett in March of 2000.  The language which Plaintiffs allege supports their opposition to the pending summary judgment motion states:

> The proceeds of the loan and/or other extensions of credit will be used primarily for agricultural, commercial, investment, or business purposes, the exact nature which is as follows: to provide financing on a revolving basis for land development.

Id., p. 1 (Doc.No. OPUS023335).  Plaintiffs contend that this represents "Cascade's written promise to extend 'financing' to John Robinett for 'land development' on a 'revolving basis' [which therefore] precludes summary judgment."  Mtn to Suppl., p. 4.

While the Court finds that Plaintiffs are entitled to introduce the document based on their representation that they could not have produced it earlier, its addition to the record does little to improve Plaintiffs' position.  The Business Purpose Statement does nothing to bolster Plaintiffs' argument that summary judgment should not be granted.  Contrary to Plaintiffs' argument, the document does not represent a written promise by Cascade to do anything.  It clearly states "I, John Robinett, as (or on behalf of) Borrower, state as follows…" (Id.), rendering all the statements which follow merely his representations regarding a particular promissory note (No. 5380327488).  The statement is not signed by Cascade, but even if it had been, the signature line merely indicates "Received by Cascade Bank…"  Plaintiffs argue that the "Statement is a written promise from Cascade to provide Plaintiffs with 'recurrently available' 'extensions of credit.'" Reply, p. 5.  The Court finds that it is not.

Plaintiffs submitted an additional two documents in their reply brief: a "Credit Authorization Statement" and an email thread from November 2009 containing discussions among the Cascade loan officers about John Robinett's loan.  Dkt. No. 87-2, Decl. of Vail.

There are several problems with this evidence.  The first is that, although Plaintiffs allege that they received the documents on November 19, 2013 (after they had filed the original motion

1    to supplement), it is still not permissible to submit them in a reply brief when Defendants have

2    no opportunity to respond.  If Plaintiffs believed that the documents were that important, the

3    proper procedure would have been to file another motion to supplement.  Secondly, Defendants

4    assert (in the surreply they filed to strike the new submissions) that Plaintiffs have in fact had

5    these documents for months.  Dkt. No. 90, Decl. of Lansverk.  There appears to be no reason that

6    Plaintiffs could not have submitted this evidence with their original responsive briefing,

7    rendering it inadmissible at this point.

8         Finally, as with the Business Purpose Statement, the documents are unpersuasive on the

9    point for which Plaintiffs seek to introduce them.  They represent no written agreement to renew

10   the loans at issue here or to permit Plaintiffs to repay those loans after their due date, nor do they

11   reflect any acknowledgement on Cascade's part that any such commitments had been made

12   orally or in writing.  The documents are untimely and have no probative value.  Plaintiffs'

13   request to supplement the record with these two documents is therefore DENIED.

14   Motion to certify local law question

15        Plaintiffs moved this Court to certify the following question to the Washington Supreme

16   Court:

17              Does Washington's Independent Duty Doctrine apply to tort claims arising in the
             context of a credit agreement subject to Washington's Credit Agreement Statute
18           of Frauds (RCW 19.36.010)?

19   Based on the findings contained in this order – that the independent duty doctrine is inapplicable

20   in the context of a finding (pursuant to the CASF) that there is <u>no</u> contract created between the

21   parties – there is no need to certify this question of local law.  That motion will be DENIED.

22

23

24

1                              **Conclusion**

2          Defendants' motion for partial summary judgment will be PARTIALLY GRANTED (as

3    to the contract causes of action) and PARTIALLY DENIED (as to the tort and equity causes of

4    action).  Plaintiffs' motion to strike Defendants' reply in support of their summary judgment will

5    be DENIED.  Plaintiffs' motion to supplement the record will be PARTIALLY GRANTED (as

6    to the Business Purpose Statement) and PARTIALLY DENIED (as to the remaining documents);

7    their motion to certify a local law question will be DENIED.

8

9          The clerk is ordered to provide copies of this order to all counsel.

10         Dated: December _16_, 2013.

11

12                                        _____

13                                        Marsha J. Pechman
                                          United States District Judge

14

15

16

17

18

19

20

21

22

23

24